UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| LADONNA BERTHIAUME | ) | |
| | ) | |
| V. | ) | NO. 2:07-CV-46 |
| | ) | |
| APPALACHIAN CHRISTIAN VILLAGE | ) | |
| FOUNDATION, INC., and SODEXHO, INC. | ) | |
| and/or SODEXHO MANAGEMENT, INC. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on the motion of Appalachian Christian Village Foundation, Inc., (hereinafter referred to as "ACV"), to dismiss plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons which follow, the motion will be GRANTED in part and DENIED in part.

**I.     Standard Of Review.**

As it must when considering a Rule 12(b)(6) motion, the Court will accept as true all factual allegations in the complaint and construe the complaint in the light most favorable to the plaintiff. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983). Indeed, the facts as alleged by the plaintiff cannot be disbelieved by the Court. *See, e.g., Neitzke v. Williams*, 490 U.S. 319 (1989); *Murphy v. Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). Where there are conflicting interpretations of the facts, they must be construed in the plaintiff's favor. *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039-40 (6th Cir. 1991). A Rule 12(b)(6) motion tests only whether the plaintiff has pleaded a cognizable claim. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 2d 434, 436 (6th Cir. 1998). The complaint, however, must do more than make bare assertion

of legal conclusions. *Columbia Natural Resources, Inc. v. Tadem*, 58 F.3d 1101, 1109 (6th Cir. 1995). Legal conclusions or unwarranted factual inferences need not be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *LRL Propertoes v. Portage Metro Housing Authority,* 55 F.3d 1097, 1103 (6th Cir. 1995).

**II.     Factual Background.**

The plaintiff asserts claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3, 2000e-5, and 42 U.S.C. § 1981a for "sexual harassment, sex discrimination, hostile work environment with resulting adverse employment actions, and constructive discharge. . ." Amend. Comp., ¶ 1. The plaintiff is a 34 year old white female resident of Washington County, Tennessee who, at all times relevant to her claims, was jointly employed by ACV and Sodexho. ACV operates a nursing home and an independent assisted living facility in Johnson City, Tennessee and plaintiff worked in the catering and food service operation at its Pine Oaks Johnson City, Tennessee assisted living facility. *Id*. ¶¶ 2, 3. Sodexho (used herein to refer jointly to the Sodexho defendants, Sodexho, Inc. and Sodexho Management, Inc.) is a food and facilities management company which operated the kitchen and catering service for ACV under a contractual arrangement with ACV. *Id*. ¶ 4. Plaintiff was supervised by Sodexho employee David Scott Meese and it is alleged by plaintiff that both Sodexho and Meese were agents of ACV for Title VII purposes. *Id*. ¶¶ 2, 4.

While plaintiff was employed at the Pine Oaks facility, Meese announced to the plaintiff and other kitchen employees that he "was God" and dealt with employees in a loud and overbearing

2

manner. One female kitchen employee who complained to AVC about Meese's behavior was discharged during the summer of 2005. *Id.* ¶ 5. Beginning in June, 2005, Meese began to sexually harass the plaintiff by making level and unwelcome sexually oriented comments. The plaintiff was offended and distressed by Meese's unwelcome behavior and rebuffed his repeated propositions. Meese often made offensive and embarrassing comments about plaintiff's physical characteristics. *Id.* ¶ 6. On or about July 1, 2005, Meese physically assaulted the plaintiff by grabbing her and touching her in a sexually suggestive and offensive manner. *Id.* ¶ 7.

After plaintiff had rejected Meese's advances, Meese began a pattern of discriminating and retaliatory conduct against the plaintiff, repeatedly directing loud, obscene and offensive comments toward her. Meese also physically assaulted the plaintiff and threatened to fire her. In an effort to punish plaintiff for rejecting his unwelcome sexual advances, Meese scheduled plaintiff to work consecutive shifts without the customary days off. *Id.* ¶ 8.

As a result of Meese's behavior, plaintiff suffered from anxiety and panic attacks, for which she was treated by a physician. In September, 2005, Meese reduced plaintiff's working hours from a regular 40 hour week to approximately one-half that number of hours, reducing her income and making her ineligible for employer health care insurance benefits. *Id.* ¶ 9. Because of the emotional distress associated with Meese's behavior, plaintiff suffered a nervous breakdown, could not drive herself to work and voluntarily left her employment, apparently on September 3, 2005. *Id.* ¶ 10. During an exit interview which was required by ACV before plaintiff could receive her final pay check, plaintiff told ACV's human resources manager about Meese's sexual harassment, his sexual assault upon her and of her repeated objections to, and rejections of, Meese's sexual demands. She also complained about the reduced work schedule and explained to the human resources manager

3

that she could not continue to work after Meese had reduced her hours and made her ineligible for participation in the company's health insurance plan. *Id.* ¶ 11. While the HR manager expressed that the company would not tolerate sexual harassment, neither the HR manager nor any other managing agent of ACV took any action to restore plaintiff's position or to stop Meese's sexual harassment and retaliation. *Id.* ¶ 12. Plaintiff alleges that her resignation was in reality a constructive discharge and constitutes an adverse employment action for purposes of Title VII liability. *Id.* ¶ 13.

### III. Analysis and Discussion.

ACV moves the Court to dismiss plaintiff's amended complaint in its entirety for failure to state a claim upon which relief can be granted. ACV raises a host of arguments in support of its position in its memorandum and the Court will deal with each of these in turn.

### A. Is ACV A Proper Party?

ACV claims that plaintiff was an employee of Christian Home For The Aged, Inc. d/b/a Appalachian Christian Village and asserts that "ACV has put plaintiff on notice of this fact in at least five different pleadings before this Court." ACV also refers to its certificate of corporate interest which states that Christian Home For The Aged, Inc. d/b/a Appalachian Christian Village is a non-profit corporation and is the sole member of Appalachian Christian Village Foundation, Inc., also a non-profit corporation. As noted above, plaintiff's amended complaint alleges that she was "employed jointly" by ACV and the co-defendant, Sodexho.

Simply put, this is not a question appropriate for resolution on a Rule 12(b)(6) motion to dismiss. Whether plaintiff was, in fact, an employee of ACV is a question of fact, more appropriately resolved on a motion for summary judgment. ACV's argument that it is entitled to

4

judgment as a matter of law based on its *allegations* that it is not the proper party is a distortion of the purpose of Rule 12(b)(6) and misstates the standard to be applied in deciding the motion. The question of whether or not plaintiff was employed by ACV, as well as the questions of whether Meese and/or Sodexho are the agents of ACV for Title VII purposes, all appear to be fact intensive questions which must be resolved either on a motion for summary judgment or by the finder of fact. ACV's motion to dismiss pursuant to Rule 12(b)(6) lacks merit on this issue.

**B.     The Retaliation Claim.**

To establish a claim of retaliation under Title VII, a plaintiff must prove that: 1) she engaged in activity protected by Title VII; 2) this exercise of protected rights was known to defendant; 3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and 4) there was a causal connection between the protected activity and the adverse employment action or harassment. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000); Civil Rights Act of 1964, § 704(a), 42 U.S.C. § 2000e-3(a).

ACV argues that plaintiff has not alleged that she engaged in any protected activity while an employee of ACV and cannot establish the first element of a cause of action for retaliation under Title VII. Plaintiff does not allege that she ever notified any person at ACV about Meese's offensive conduct, but she does allege that she protested and objected to Meese personally. ACV argues that Meese was a Sodexho employee but does not contest that Meese was plaintiff's supervisor, citing *Rachel-Smith v. FTData, Inc.*, 247 F.Supp.2d 734, 748-49 (D. Md. 2003), holding that a plaintiff's communication to her immediate supervisor to cease his sexual advances falls short of the standard for protected activity under the opposition clause. ACV argues, therefore, that, as a matter of law,

5

it was impossible for ACV to retaliate against the plaintiff when it had no notice of any wrongdoing on the part of Meese. Plaintiff's position, however, is straightforward. Plaintiff argues that by "objecting to, and rejecting, Meese's sexual harassment and assault", she engaged in protected activity.

Title VII makes it unlawful for an employer to discriminate against any of its employees because the employee has opposed any unlawful employment practice prohibited by Title VII ("the opposition clause") or because the employee has participated in proceedings under Title VII (the "participation clause"). 42 U.S.C. § 2000e-3(a). The Sixth Circuit has enumerated the types of activity that constitute opposition under Title VII: "Complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer-*e.g.*, former employers, union, and co-workers." *Johnson v. University of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000). The general idea is that Title VII "demands active, consistent 'opposing' activities to warrant . . . protection against retaliation." *Bell v. Safety Grooving and Grinding, LP*, 107 Fed. Appx. 607, 610 (6th Cir. 2004).

Activity by the employee prior to the initiation of actual proceedings under Title VII are generally examined in the context of the opposition clause. *See Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304 (6th Cir. 1989). The opposition clause prohibits retaliation for opposing a practice made unlawful by the statute; it does not, however, protect all opposition activity. *Holden v. Owens-Illinois, Inc.*, 793 F.2d 745, 751 (6th Cir.), *cert. denied* 479 U.S. 1008 (1986). The Sixth Circuit has specifically found that internal complaints are a form of protected activity. *See, e.g., Holden*, 793 F.2d at 750.

6

The Sixth Circuit does not appear to have addressed the precise question raised by the defendant's motion, *i.e.*, whether objecting to or rejecting the offensive conduct of a supervisor is a form of protected activity. At least one other circuit, however, has answered the precise question and has held that an employee has "engaged in the most basic form of protected activity when she told her supervisor, [ ], to stop his offensive conduct." *Ogden v. Wax Works, Inc.,* 214 F.3d 999, 1007 (8th Cir. 2000). Courts in the Southern District of Georgia and the Middle District of Tennessee have reached a similar conclusion. *See Quarles v. McDuffy County*, 949 F. Supp. 846, 853 (S.D. Ga. 1996); *Reed v. Cracker Barrel Old Country Store, Inc.*, 133 F. Supp.2d 1055, 1070 (M.D. Tenn. 2000) (deeming employee to have engaged in protected conduct when she told her immediate supervisor directly to stop sexually harassing her). It thus appears that plaintiff has provided the short and plain statement of the nature of her claim as required by Rule 8(a) as to the first element of a claim of retaliation under Title VII.

ACV also argues that plaintiff fails to meet the third and fourth prongs of the retaliation cause of action. ACV correctly argues that plaintiff must allege an adverse employment action taken after the employee engaged in protected activity. ACV argues that it could not have taken such action since it found out about the sexual harassment only after plaintiff had left its employment. ACV's argument, however, overlooks plaintiff's allegation that Meese was acting as an agent of ACV and her allegation that Meese retaliated against her by reducing her work schedule after she rebuffed his offensive advances. Such an allegation is sufficient at this stage of the case. ACV also argues that there can be no causal connection between the protected activity and the adverse employment action because she "did not engage in any protected activity as an employee of ACV" and "was no longer an employee of ACV when she finally notified ACV of Meese's alleged action."

7

Once again, plaintiff's allegations are sufficient to defeat a Rule 12(b)(6) motion and the resolution of these questions is highly fact intensive and should be addressed on summary judgment or by the factfinder only after discovery on these issues has been completed.

For these reasons, defendant's motion under Rule 12(b)(6) as to plaintiff's retaliation claim lacks merit.

### C. Plaintiff's Disparate Treatment Sex Discrimination Claim.

As the defendant notes, plaintiff's complaint asserts claims "for sexual harassment/hostile work environment, sex discrimination and retaliation . . ." It is, therefore, very difficult to discern whether or not plaintiff is in fact asserting claims for both disparate treatment and hostile work environment/sexual harassment or whether her statements are simply redundant. Nevertheless, the Court will treat plaintiff's complaint as an attempt to allege both causes of action.

In order to plead a case of disparate treatment, plaintiff must allege that: 1) she was a member of a protected class; 2) she suffered an adverse employment action; 3) she was qualified for the position; and 4) she was replaced by someone outside the protected class or was treated differently than similarly situated, non-protected employees. *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004). While ACV alleges that plaintiff's allegation of constructive discharge is insufficient to establish an adverse employment decision, the Court need not address that question in connection with the disparate treatment claim. Plaintiff has alleged no facts to suggest that she was replaced by someone outside the protected class or was treated differently than similarly situated employees. Therefore, she fails to plead the necessary fourth element of a case of sex discrimination and, to the extent she asserts a disparate treatment claim, that claim will be dismissed.

### D. Plaintiff's Claim For Hostile Work Environment/Sexual Harassment.

8

The elements of a claim of hostile work environment based upon sex are: 1) that plaintiff is a member of a protected class; 2) that she was subjected to unwelcome sexual harassment; 3) that the harassment was based on sex; 4) that the harassment had the effect of unreasonably interfering with her work performance by creating an intimidating, hostile, or offensive work environment; and 5) the existence of employer liability. *Newman v. Federal Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001).

ACV focuses its argument on the fifth element, *i.e.*, employer liability, and alleges that, as a matter of law, plaintiff cannot state a claim against ACV because there is no set of facts alleged by plaintiff that can impute employer liability to ACV. ACV relies primarily on the fact that Meese was an employee of Sodexho, even though he managed and supervised ACV's kitchen staff, including the plaintiff. ACV further argues that because Meese is not an ACV employee, plaintiff's hostile work environment claim must be examined by applying the law of co-worker or non-employee harassment. ACV's argument, however, overlooks or ignores the allegation of plaintiff's complaint that, while Meese may have been an employee of Sodexho, he was acting as the agent of ACV in managing the kitchen staff and this Court must accept that allegation as true in deciding ACV's Rule 12(b)(6) motion. This factor alone makes the resolution of this question more appropriate for a motion for summary judgment after appropriate discovery, rather than on a Rule 12(b)(6) motion. Whether ACV had actual or imputed knowledge of Meese's actions is a fact intensive question and cannot be decided as a matter of law at this stage of the case. ACV's motion to dismiss the hostile work environment claim will, therefore, be denied.

**E.     Plaintiff's "Constructive Discharge" Claim**.

ACV alleges that the facts alleged in plaintiff's complaint are not sufficient to establish a

9

constructive discharge sufficient to establish the necessary adverse employment action as part of her hostile work environment claim. Given that the hostile work environment claim will not be dismissed at this stage of the proceedings, the Court need not decide whether or not plaintiff can establish a constructive discharge.

The Court is compelled, however, to address the issue in view of what appears to be a basic misunderstanding on the part of the plaintiff, as expressed in both her complaint and in her responsive pleading, as to the significance of a constructive discharge. Both plaintiff's complaint and her response to the motion to dismiss seem to indicate that plaintiff can pursue a separate "constructive discharge claim" as a stand alone cause of action. Plaintiff is, however, incorrect. While it is true that plaintiff may establish an adverse employment action by demonstrating that she was constructively discharged, *see Logan v. Denny's, Inc.*, 259 F.3d 558, 568 (6th Cir. 2001), constructive discharge in itself is not a cause of action and cannot be pursued as an independent claim. *Id.*; *Crow v. Disney Store*, 889 F. Supp. 344, 347 (E.D. Mich.1995).

### F. Timeliness of Plaintiff's Complaint.

ACV correctly argues that Title VII contains a 300 day filing period which requires that any claim of alleged discriminatory or retaliatory conduct must be made within 300 days of the conduct. Plaintiff does not dispute that. ACV specifically argues that any discrete acts of alleged discriminatory or retaliatory conduct that occurred prior to July 25, 2005, are outside the 300 day filing period and are thus untimely. Once again, however, ACV approaches this matter as if it were a motion for summary judgment, rather than a motion under Rule 12(b)(6). Construing plaintiff's complaint in the light most favorable to the plaintiff and drawing all inferences in favor of the plaintiff, as this Court is required to do on a Rule 12(b)(6) motion, the Court cannot say, as a matter

10

of law, that plaintiff's complaint is untimely. ACV acknowledges allegations of acts committed after July 1, 2005, in the form of obscene language directed toward plaintiff. ACV disingenuously suggests, however, that the plaintiff's complaint does not reveal that the obscene language was of a sexually harassing nature. The commonly understood meaning of "obscene" suggests otherwise. ACV is certainly free, through a discovery deposition of the plaintiff, to examine the nature and context of the language used or, if it prefers that such become part of the public record, can seek a more definite statement. However, plaintiff's complaint will not be dismissed on this basis on a Rule 12(b)(6) motion.

**IV. Conclusion.**

For the reasons set forth above, the motion of ACV to dismiss pursuant to Rule 12(b)(6) will be GRANTED IN PART AND DENIED IN PART. To the extent plaintiff seeks to assert an independent, stand alone claim for constructive discharge and sex discrimination based on disparate treatment, her claims are DISMISSED. In all other respects, the motion of the defendant is DENIED.

So Ordered.

ENTER:

                                                      s/J. RONNIE GREER
                                       UNITED STATES DISTRICT JUDGE

11

Case 2:07-cv-00046   Document 31   Filed 09/04/08   Page 11 of 11   PageID #: 115