UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| LADONNA BERTHIAUME | ) | |
|---|---|---|
| | ) | |
| v. | ) | NO. 2:07-CV-46 |
| | ) | |
| CHRISTIAN HOME FOR THE AGED, | ) | |
| INC., and SODEXHO, INC., and/or | ) | |
| SODEXHO MANAGEMENT INC. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on plaintiffs' Rule 59 motion to alter or amend the judgment, [Doc. 96]. The defendant has replied, [Doc. 100], and the matter is ripe for review. The plaintiff argues that the Court erred in (1) stating that the plaintiff did not address "the issue of whether supervisor Meece had committed a tangible employment action which precluded ACV from asserting the *Ellerth/Faragher* affirmative defense to her hostile work environment claim and constructive discharge claim"; (2) deciding that the *Ellerth/Faragher* affirmative defense was applicable to plaintiff's constructive discharge claim; and (3) finding, during the analysis of the *Ellerth/Faragher* affirmative defense, there was no genuine issue of material fact that plaintiff acted reasonably.[1] *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

In plaintiff's Memorandum in Opposition to the Defendant's Motion for Summary

---

[1]The defendant argues that the plaintiff is inappropriately attempting to use a Rule 59 motion to obtain a complete reversal of this Court's prior ruling by re-arguing her original arguments. This Court does not read her arguments so narrowly, for she does assert that the Court made clear errors in the law. *See* Fed. R. Civ. P. 59(e). Thus, the Court will address all three arguments.

Judgment and in her Motion to Alter or Amend the Judgment, she summarizes her three alternative claims as follows:

> The plaintiff respectfully insists that under the facts of this case a reasonable jury could conclude that: 1) she was subjected to a sexually hostile work environment and is entitled to Title VII relief against ACV if ACV cannot prove the affirmative defense; or 2) that she was subjected to a hostile work environment which justified her quitting work and resulted in a constructive discharge so that she is entitled to complete Title VII relief against ACV if A CV cannot prove its affirmative defense; or 3) that she was subjected to a hostile work environment and a tangible employment action which resulted in a constructive discharge and automatic Title VII liability against ACV.

[Docs. 55 and 97]. In sum, the plaintiff seems to assert in the Rule 59 motion that the Court erred with respect to claim three for not finding the defendant vicariously liable and for applying the *Ellerth/Faragher* affirmative defense.[2] The only basis for reconsideration sought as to the first and second claims regards this Court's determination as to whether the plaintiff acted reasonably while applying the affirmative defense.[3] The Court will discuss each issue in turn after setting forth the standard of review.[4]

## I. STANDARD OF REVIEW

A motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e) may be granted (1) to correct a clear error of law; (2) to account for newly discovered evidence

---

[2]The defendant argues that the plaintiff raises this argument for the first time in the Rule 59 motion and, thus, asserts that this Court should not consider it. However, this Court finds that it is not a new argument but is actually more clearly articulated, argued and supported in the Rule 59 motion. Therefore, this Court will address the argument.

[3]As to the first two claims, plaintiff concedes that the *Ellerth/Faragher* affirmative defense is available to the defendant.

[4]A complete recitation of the facts is set forth in this Court's prior opinion. *See* [Doc. 94].

or an intervening change in the controlling law; or (3) to otherwise prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir.1999). A Rule 59(e) motion cannot be used to re-litigate previously decided issues, reargue a case, or raise new legal theories. *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 395 (6th Cir. 2007). These motions "are not the proper vehicle to attempt to obtain a reversal of a judgment by offering the same arguments previously presented." *Kenneth Hener Special Projects Procurement v. Continental Beomari Industries, Inc.*, 86 F.Supp.2d 721, 726 (E.D. Mich. 2000). Furthermore, Rule 59(e) motions are "'extraordinary in nature'" and "'should be discouraged.'" *Plaskon Electronic Materials, Inc. v. Allied-Signal, Inc.*, 904 F.Supp. 644, 669 (N.D. Ohio 1995) (quoting *In Re August, 1993 Regular Grand Jury*, 854 F. Supp. 1403, 1406 (S.D. Ind. 1994)). As such, these motions are "granted ' very sparingly.'" *Id.* (quoting *Bakari v. Beyer*, 870 F. Supp. 85, 88 (D.N.J. 1994)).

## II. ANALYSIS

As part of this Court's analysis, it is important to set forth the elements of proof and to distinguish between the plaintiff's three claims. Regarding the first claim, sexual harassment based on hostile work environment, the plaintiff must show that "(1) she is a member of a protected class (female); (2) she was subjected to harassment, either through words or actions, based on sex; (3) the harassment had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer." *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008). As part of the fourth element, "[w]here the harassment is attributed to a supervisor with immediate or successively higher authority over the employee, a court looks first to whether the

supervisor's behavior "culminate[d] in a tangible employment action" against the employee; if it did, "the employer will, *ipso facto*, be vicariously liable[.]" In the absence of such tangible action, an employer will still be liable for a hostile work environment created by its supervisors unless it successfully establishes [the *Ellerth/Faragher*] affirmative defense." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 274-75 (6th Cir. 2009) (citations omitted). As stated above, the plaintiff concedes that the affirmative defense applies to this claim. Thus, she does not allege that any of Meece's actions resulted in a tangible employment action.

To prove the second compound claim, hostile work environment/constructive discharge, the plaintiff must prove the four elements listed above and something more. The plaintiff must show "working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004). Another difference is that a plaintiff who prevails under this theory is entitled to damages available for formal discharge. *Id*. at n. 8. Thus, "[t]he plaintiff may recover postresignation damages, including both backpay and, in fitting circumstances, frontpay, as well as the compensatory and punitive damages now provided for Title VII claims generally." *Id*. (citations omitted). Aside from the damages, as the Supreme Court stated in *Suders* "the only variation between the two claims is the severity of the hostile working conditions." *Id*. At 149.

This compound hostile work environment/constructive discharge claim is similar to a singular hostile work environment claim in that conduct that "is so intolerable that a reasonable person would have felt compelled to resign" can be effectuated through "co-worker conduct, unofficial supervisory conduct, or official company acts."[5] *Id*. at 148. Furthermore, as with a

---

[5]Actual termination claims will always be effected through official acts of the company.

singular hostile work environment claim, the *Ellerth/Faragher* affirmative defense is available to a hostile work environment/constructive discharge claim. This Court pointed out in its prior opinion that the Sixth Circuit has stated that "constructive discharge, while a potential liability-incurring employment action for the employer, is not a 'tangible employment action' in sexual harassment [hostile work environment ] cases. Therefore, the affirmative defenses available to employers in non-tangible action [or unofficial action] cases are available in constructive discharge cases." *Plautz v. Potter*, 156 Fed. Appx. 812, 819 (6th Cir. 2005).[6]

Regarding the third claim, it is true that the plaintiff alleges a hostile work environment, constructive discharge and tangible employment action. However, this claim does not simply add another facet to the second claim, the added facet being a tangible employment action allegation. It is different in several respects. In the second claim, the plaintiff argues that her constructive discharge was a result of harassment which was so severe that it caused her to reasonably resign. This harassment was in the form of Meece's unofficial conduct. Regarding the third claim, the plaintiff contends that her constructive discharge was a result of Meece's official

---

[6]In arguing this compound claim, the plaintiff apparently relies upon unofficial acts committed by her supervisor, for she does not allege that a tangible employment action occurred as to this claim. Again, tangible employment actions "are the means by which the supervisor brings the official power of the enterprise to bear on subordinates." *Ellerth*, 524 U.S. at 762. Moreover, the plaintiff concedes that the affirmative defense applies. Also, the defendant states in its response to the Rule 59 motion, that plaintiff "dealt solely with whether the tangible employment action combined with a hostile work environment resulted in an alleged constructive discharge." Defendant states that the plaintiff never actually argued that a tangible employment action, i.e. the schedule change, occurred which should impose vicarious liability. In addition, it seemed that the plaintiff was raising constructive discharge as a separate claim entirely.

For these reasons, in the Court's prior opinion, this Court did not elaborate upon whether the affirmative defense applied in a hostile work environment claim where an alleged tangible employment action caused a constructive discharge. It only addressed whether there was a tangible employment action based on the unofficial acts of the supervisor in the compound second claim, hostile work environment/constructive discharge. However, now that the plaintiff has more clearly articulated her arguments, this Court understands her argument in relation to her third alternative claim in which she actually did assert a tangible employment action. Thus, the third claim will be addressed below.

action of changing her work schedule and, thus, reducing her pay. Thus, she alleges that this official action was a tangible employment action which caused her to be constructively discharged.

Therefore, in order to prove this claim, the plaintiff must show all four elements of a sexual harassment hostile work environment claim as set forth above. In addition, as part of the fourth element regarding employer liability, the plaintiff must show that Meece's behavior "culminate[d] in a tangible employment action." *Ellerth*, 524 U.S. at 765. If the official action amounts to a tangible employment action, then the employer will, *ipso facto*, be vicariously liable. *Gallagher*, 567 F.3d at 274-75.

To be sure, the important distinction between the plaintiff's second and third claims is the nature of Meece's conduct. In this last claim, it is his official conduct that is alleged to be the tangible employment action. In *Suders*, the Court stated that "when an official act does not underlie the constructive discharge, the *Ellerth* and *Faragher* analysis, we here hold, call for extension of the affirmative defense to the employer." 542 U.S. at 148. The Court then goes on to explain why the defense would be necessary in situations of unofficial conduct but not in situations where official conduct is alleged. *See id*. The Court stated:

> . . . [O]fficial directions and declarations are the acts most likely to be brought home to the employer, the measures over which the employer can exercise greatest control. *See Ellerth*, 524 U.S., at 762, 118 S.Ct. 2257. Absent "an official act of the enterprise," *ibid*., **as the last straw**, the employer ordinarily would have no particular reason to suspect that a resignation is not the typical kind daily occurring in the work force. And as *Ellerth* and *Faragher* further point out, an official act reflected in company records–a demotion or a reduction in compensation, for example–shows "beyond question" that the supervisor has used his managerial or controlling position to the employee's disadvantage. *See Ellerth*, 524 U.S., at 760, 118 S.Ct. 2257. Absent such an official act, the extent to which the supervisor's misconduct has been aided by the agency relation, as we earlier recounted, *see supra*, at 2353, is less certain. That uncertainty, our

> precedent establishes, *see supra*, at 2353-2354, justifies affording the
> employer the chance to establish, through the *Ellerth/Faragher*
> affirmative defense, that it should not be held vicariously liable.

*Id*. at 148-49 (emphasis added). Accordingly, the *Ellerth/Faragher* affirmative defense is not applicable in regard to the plaintiff's third claim even though unofficial acts and an official act were both allegedly committed. The official act of changing the plaintiff's work schedule and, thus, reducing her pay was the "last straw" in causing her to resign. As such, the affirmative defense is not available.

### A. Whether Meece's official conduct constituted a tangible employment action.

The plaintiff argues that Meece's official act of changing her work schedule, which reduced her work hours and, thus, reduced her pay, constituted a tangible employment action. This tangible employment action led to her alleged constructive discharge. The defendant argues that the action does not rise to the level of a tangible employment action for several reasons: (1) plaintiff quit her employment the week before the reduced schedule was to take effect; (2) plaintiff's scheduled hours varied weekly, and she could have been scheduled for more hours at a later time to make up the difference; (3) plaintiff and other employees would frequently swap shifts if someone wanted more or less hours; (4) plaintiff was not permanently affected by the change; and (5) plaintiff's change in schedule was not significant and her cut in pay was not extreme.[7]

Again, tangible employment actions "are the means by which the supervisor brings the official power of the enterprise to bear on subordinates." *Ellerth*, 524 U.S. at 762. These actions

---

[7] The record, when viewed in the light most favorable to the plaintiff, shows that Meece originally scheduled the plaintiff with an increase in work hours and consecutive days. Then, he apparently reduced the plaintiff's hours in a subsequent schedule change. The defendant argues that the original increase was not a tangible employment action. This Court will not address this argument, for the plaintiff does not seem to allege that the increase was a tangible employment action. The focus of plaintiff's motion to alter or amend the judgment is upon the decrease in hours.

are significant changes in employment status, "such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, a change in benefits, or other factors unique to [his] particular situation." *Akers v. Alvey*, 338 F.3d 491, 497-98 (6th Cir. 2003). "Loss of pay" can also constitute a tangible employment action. *See Thornton v. Fed. Express Corp.*, 530 F.3d 451, 454-55 (6th Cir. 2008). The change in employment conditions "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993).

To review, plaintiff asserts that sometime after the July 4 "touching incident" Meece had began scheduling her for longer work weeks. She went to a doctor with various complaints, and the doctor gave her a note stating that she should not work more than 40 hours per week. The plaintiff gave the note to Meece. She also told him that she did not want to work fewer than 38 to 40 hours per week.

In August, Meece posted a two-week September work schedule, which was the typical way of conveying to the employees the hours they were to work. It scheduled the plaintiff to work "a lot of hours." The next day, the plaintiff's doctor's note was taped beside the schedule. Plaintiff denies doing this.[8] The final September 2005 work schedule set plaintiff's hours to 37 hours the first full week of September, 21.5 hours the second week, 19 hours the third week, and 29 hours the fourth week. The plaintiff claims that although her work-week hours varied from week to week since the beginning of her employment, this was a significant decrease, which affected her income.

---

[8]In the plaintiff's additional statement of undisputed facts, she alleges that another employee told her that when Meece found the doctor's note taped beside the first schedule, he said that he "would fix her damn problem." The next schedule reduced her hours. The defendant objects to the statement as hearsay which cannot be considered on summary judgment. The Court merely notes the dispute for the record.

Upon another review of the record, including the posted work schedules and plaintiff's pay record, it is clear that plaintiff's hours varied from day to day, week to week, and month to month. There is no clear pattern in the number of hours worked. She averaged approximately 34 hours a week. From the beginning of her employment, there are at least four weeks, other than the three scheduled in September, where the plaintiff worked 21 to 29.5 hours. It is true, however, that these times were not within the same month. It is also true that plaintiff worked more hours per week in August than her approximate average. Every week in August the plaintiff worked over 40 hours. Thus, going from a time where she worked the most she had ever worked to a time where she was reduced to prior lower levels may seem like a significant cut in pay.

All of that being said, the defendant is correct in that the record shows that the plaintiff quit her employment the week before the reduced schedule was to take effect, and she and other employees would frequently swap shifts if someone wanted more or less hours. The record does not indicate that she attempted to have her schedule changed or to swap with a co-worker. In addition, there is no evidence in the record that the reduction was permanent, especially considering her weekly hours varied constantly and that she had worked 21 to 29 hours per week in weeks past. Also, the last week of September was increased to 29 hours.

Considering the record as a whole, and considering this Court must view the facts in the light most favorable to the plaintiff, this Court concludes that there is a genuine issue of material fact as to whether the schedule change which resulted in a reduction in salary was a tangible employment action. This Court understands that *de minimis* employment actions and "very temporary" actions are not actionable under Title VII. *Bowman v. Shawnee State Univ.* 220 F.3d 456, 462 (6th Cir. 2000). In this case, there is a good argument that because the plaintiff's hours

changed weekly and because she had worked as few as 21 hours in weeks past, that the change was *de minimis* and temporary. However, considering she worked over 40 hours per week the entire prior month, a reasonable jury could conclude that such a reduction the next month, after the plaintiff's doctor's note was posted by the first September schedule, was a tangible employment action. Therefore, there is an issue of fact as to this claim. *See Howington v. Quality Restaurant Concepts, LLC*, 298 Fed. Appx. 436, 443 (6th Cir. 2008) (stating that in a quid pro quo sexual harassment case, sending an employee home on two separate occasions where she lost income in the form of tips was a tangible job detriment); *see also Suppacheewa v. Madisonville Community College*, 4:08-CV-00031-JHM, 2010 WL 3981223, at *7 (W.D. Ky Oct. 8, 2010) (stating suspension for several days constituted an adverse employment action even though employee was reinstated with backpay); *Moss v. Fairborn City Schools*, 3:08-CV-00393, 2009 WL 5947169, at *7 (S.D. Ohio Dec. 29, 2009) (finding plaintiff who was twice suspended for three days suffered tangible employment action).

**A. Whether plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.**

First, this Court notes that the plaintiff stated in her motion to alter or amend the judgment that "[o]nce the jury had found that Scott Meece took a tangible employment action against Ms. Bethiaume, the controversy over the 'reasonableness' of Ms. Berthiaume's belief that she would be discharged if she complained about Meece's sexual harassment drops out of the picture and is no longer relevant to her right to recover Title VII damages." This statement is correct in regard to her third claim. However, because the plaintiff conceded that the *Ellerth/Faragher* affirmative defense applies in the first two claims, this Court will address the plaintiff's other argument contained in her motion, i.e. whether the plaintiff acted unreasonably.

As stated previously, in the absence of a tangible employment action, an employer will still be liable for a hostile work environment created by its supervisors unless it successfully establishes as an affirmative defense that (a) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (b) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765; *accord Faragher*, 524 U.S. at 807. Here, the plaintiff argues that this Court clearly erred when it concluded that the plaintiff acted unreasonably by not reporting the harassment.

As stated in this Court's previous opinion, the plaintiff claims that she did not report the harassment because she thought Meece was transferring to a job in a different state. She also claims that she was afraid to report the incidents via the posted telephone number because Austin told her Berkel investigated those reports, and because of Miller's termination. To be sure, some of the information told to the plaintiff was hearsay. However, some of the information was not hearsay because it is not offered to prove the truth of the matter asserted but to show the plaintiff's state of mind.

The plaintiff is correct in that the reasonableness of a person's actions is usually a question for a jury to determine. This Court noted in its prior opinion that the analysis of this particular issue is difficult. Putting the hearsay statements aside and only considering those statements which are not hearsay, and considering that the facts should be viewed in the light most favorable to the plaintiff, this Court concludes that there is an issue of fact as to whether the plaintiff acted reasonably. As such, the plaintiff's motion is **GRANTED**.

**III. CONCLUSION**

For the reasons stated above, the plaintiff's motion to alter or amend the judgment, [Doc. 96], is **GRANTED**. The three claims as set forth above shall be tried before a jury. The clerk is **DIRECTED** to set a scheduling conference for the purpose of setting this case for trial and to set related deadlines.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE